UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,                          Criminal Action No.
                                                    10-CR-20330

vs.

                                                    HON. MARK A. GOLDSMITH

STANLEY GILL,

       Defendant.
_____/

**OPINION AND ORDER ACCEPTING AND ADOPTING THE MEGISTRATE JUDGE'S REPORT AND RECOMMENDATION, OVERRULING DEFENDANT'S OBJECTIONS, and DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE**

Defendant is charged with being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1). The case was reassigned from United States District Judge Sean F. Cox to the undersigned district judge. Before the case was reassigned, Judge Cox referred Defendant's motion to suppress evidence, filed on August 4, 2010, to Magistrate Judge Michael Hluchaniuk. The Magistrate Judge conducted an evidentiary hearing and, thereafter, issued a Report and Recommendation ("R&R") on June 13 2011, in which he recommends that Defendant's motion to suppress be denied (Dkt. 33). Defendant filed objections to the R&R (Dkt. 34). After Defendant filed his objections, the Court requested and received supplemental briefing from both Defendant and the Government (Dkts. 35, 37, 45). The matter is now ready for decision.[1]

---

[1] Several months ago, the parties informed the Court that they were discussing resolution of this matter without further judicial intervention. At a status conference held on October 18, 2011, however, the parties informed the Court that they were unable to reach such an agreement.

The Magistrate Judge has succinctly summarized the procedural background of the case, the parties' arguments, and the testimony elicited by the various witnesses at the evidentiary hearing held in this matter.  The Court need not repeat these aspects of the R&R here.

Defendant asserts four objections to the R&R.  The Court reviews de novo those portions of the R&R to which a specific objection has been made.  28 U.S.C. § 636(b)(1).

Defendant's first and third objections both concern the lawfulness of the initial entry into the house by the officers.  In the first objection, Defendant argues that, contrary to the Magistrate Judge's conclusion, Mrs. Gill did not consent to the initial entry into the house; rather, according to Defendant, Mrs. Gill merely "submitted to the officers' claim that she needed to let them in."  Objections at 1-2.  In his third objection, Defendant faults the Magistrate Judge for crediting the testimony of the officers over that of Mrs. Gill.

As the Magistrate Judge noted in the R&R, the officers testified at the evidentiary hearing that they were invited in the house by Mrs. Gill.[2]  Mrs. Gill, on the other hand, testified that she

---

[2] Sergeant Fontana testified:

> Q: What happened after [Mrs. Gill] said [Defendant] might be in the basement?
>
> A: Lieutenant Shanlian [mentioned] his car being in the driveway and she said yes, he might be in the house or in the basement and she let us come in, she invited us in, and we stepped inside the house and she yelled downstairs to her son that the police were here.
>
> Q: Do you remember her saying anything to invite you in?  Did she say come on in, or did she open the door, or how that invitation came to be?
>
> A: I believe she let us come in, she invited us in and said come in and you know, I don't want to say for sure.  But she definitely invited us in, opened the door for us to come in and -- and let us check.
>
> * * * *

2

did not invite the officers in the house.³ Accordingly, the Magistrate Judge acknowledged that whether the officers had obtained valid consent to enter the house depended entirely on which version of the events is believed by the factfinder. R&R at 10. The Magistrate Judge then credited the testimony of the officers over that of Mrs. Gill. In support of that credibility determination, the Magistrate Judge wrote:

> The undersigned credits the testimony of the officers and concludes that they did have consent to enter the premises. The testimony of the officers was clear, logical, and generally consistent as to what was said and how it was that they entered the house. On the other hand, the testimony of Mrs. Gill was illogical and inconsistent with other evidence in the case as well as perhaps influenced by bias. The testimony of Mrs. Gill that she would answer the door at 7:30 in the morning with a see-through nightgown on is not logical. She might very well have been in her night clothes at that time of the morning, but it seems unlikely that a woman of her age and maturity would respond to a knock on the door dressed in that fashion, where the door had a "big glass window" in it. If the door had such a window, as she described, people coming to the door would be able to see her in whatever she wore to answer the door. Additionally, she did not testify that once the officers were in the house she excused herself to put something more appropriate on and the uncontradicted testimony was that she went outside the house to speak to her son and provide him with some shoes. If she was attired as

---

> Q: And then Mrs. Gill subsequently opened the door and you're saying that she invited y'all in, or did you just walk in? She opened the door and said what, come on in? Or did y'all just walk in?
>
> A: I don't remember her exact words, but she invited us in, yes.
>
> Q: Tell me how do you get invited in? How were you invited in?
>
> A: By her words.

Hr'g Tr. (Dkt. 25) at 60, 68-69. Lieutenant Shanlian's testimony, although not as detailed as Sergeant Fontana's testimony, is substantially similar. Id. at 10.

³ Mrs. Gill testified that she first refused to open the door because she was not dressed. Hr'g Tr. at 102-104. Eventually, though, Mrs. Gill opened the door because, according to her, the officers stated that they had a warrant for Defendant's arrest. Id. According to Mrs. Gill, the officers "walked past" her once the door was opened. Id. at 103. The officers, on the other hand, deny that they told Mrs. Gill that they had a warrant for Defendant's arrest. Id. at 20, 68 They also deny that Mrs. Gill protested opening the door based on her meager attire. Id.

       she described she would have, at the least, put something else on once the officers were in the house. It seems highly unlikely she would have dealt with the officers and gone outside her residence in a see-through nightgown.

       On a prior occasion she testified, under oath, that she was "naked" when she answered the door and during this hearing she said she had a "see through nightgown" on. This inconsistency suggests an intent to exaggerate the testimony. This exaggeration was perhaps intended to explain the false claim that she did not want the officers to enter. Inconsistency on a material issue is also a common method of impeachment of a witness's credibility. Another inconsistency relating to Mrs. Gill's testimony is her initial statement to the officers that she did not think her son was there. However, she had talked to her son and Ms. Taylor the night before and "knew" they were there. (Tr., p. 161). The desire to protect her son by telling the officers her son was not there, when the evidence indicates she knew he was there, is perhaps a common feeling a mother would have under such circumstances. That desire to protect her son is the type of bias that could influence Mrs. Gill's testimony and detracts from her credibility in these circumstances. That desire to protect could also cause Mrs. Gill to try to correct her "mistake" of letting the officers in the house by falsely claiming during the hearing that she had not invited them in. (Tr., p. 103).

R&R at 10-12.

       In his third objection, Defendant disputes the Magistrate Judge's determination that Mrs. Gill's testimony was "illogical and inconsistent" with the evidence presented at the evidentiary hearing, and argues that the Magistrate Judge's credibility determination should be rejected for two reasons. The Court finds neither reason undermines the Magistrate Judge's credibility determination.

       First, Defendant asserts that it was not unreasonable for Mrs. Gill to answer the front door in a see-through nightgown, given that police presence "is usually indicative of a sense of urgency." Objections at 3. The Court agrees with the Magistrate Judge that it is somewhat difficult to believe that Mrs. Gill would interact with the officers and exit her house while dressed in the manner described, especially after any initial sense of urgency had faded. The Court finds that the Magistrate Judge properly discounted Mrs. Gill's testimony on this basis.

Second, Defendant attacks the Magistrate Judge's determination that Mrs. Gill's grand jury testimony regarding her attire was inconsistent with her testimony during the evidentiary hearing. Mrs. Gill testified before the grand jury that she "didn't put no clothes on" after hearing knocking at the door, and that she was "naked." On the other hand, Mrs. Gill testified during the evidentiary hearing in this matter that she answered the door in a see-through gown. Mrs. Gill was confronted with this discrepancy at the evidentiary hearing and testified that, to her, wearing a see-through gown equates to "naked." Hr'g Tr. at 113-114. While Mrs. Gill's explanation is possible, the Court believes – as the Magistrate Judge found – that the inconsistency might reflect someone who had fabricated a justification for refusing consent to the police to enter her home. Therefore, the Court finds that the Magistrate Judge properly discounted Mrs. Gill's testimony based on her inconsistent testimony in this regard.[4]

The Magistrate Judge gave ample reasoning in support of his decision to credit the testimony of the officers over that of Mrs. Gill. Therefore, the Magistrate Judge properly found that the officers obtained valid consent to initially enter the home.

This leaves only Defendant's second and fourth objections. In his second objection, Defendant contends that even if Mrs. Gill consented to the officers' initial entry into the house, she did not consent to their entry into the basement, the specific location in which the arrest occurred. The facts relevant to this objection are as follows. While the officers were on the front porch, they informed Mrs. Gill that they were there to arrest her son. Hr'g Tr. at 36. Mrs. Gill and the officers proceeded into the living room after Mrs. Gill allowed the officers to enter the house. Id. at 69-70. From her position in the living room, Mrs. Gill verbally summoned

---

[4] The Magistrate Judge also discounted Mrs. Gill's testimony based on her statements to police about knowing whether her son was home. See R&R at 11-12. Defendant does not object to this specific credibility finding. In any event, upon de novo review, the Court finds that the Magistrate Judge properly discounted Mrs. Gill's testimony for this reason, as well.

5

Defendant, who was in the basement.  Id. at 70.  While Mrs. Gill was verbally summoning Defendant from her position in the living room, the officers walked over to the basement stairwell.  Id.  The officers knew where the basement stairwell was because Mrs. Gill was directing her summoning efforts toward that area.  Id. at 71.  Upon reaching the top of the basement stairwell area, the officers saw Defendant standing at the bottom of the stairwell, and proceeded to descend the basement stairs, where they then placed Defendant under arrest.  Id. Sergeant Fontana admitted that Mrs. Gill did not explicitly (verbally) invite him and Lieutenant Shanlian to approach the basement or to descend the basement stairway.  Id. at 70.  However, Lieutenant Shanlian testified that he and Sergeant Fontana were "led" to the basement steps by Mrs. Gill.  Id. at 21.  Mrs. Gill's testimony is not inconsistent; she testified that the officers followed her from the living room to the basement area.  Id. at 121.

The Magistrate Judge concluded that, although Mrs. Gill's consent was not verbal or explicit, her actions reasonably led the officers to believe that they had permission to approach the precise area of the house in which Defendant was located:

> With respect to Mrs. Gill's consent for the officers to go to the basement, the undersigned concludes that her actions of responding to the question by the officers as to the whereabouts of her son by walking in front of them through the living room and kitchen to the top of the stairs to the basement, while calling out to her son in the basement, constitutes consent for them to enter the basement.  She had authority to consent and her conduct reasonably indicated to the officers that she had consented to them going to the basement.  Consent need not be verbally given in order to be appropriate.  Hinojosa, 606 F.3d at 882, citing United States v. Carter, 378 F.3d 584, 589 (6th Cir. 2004) (consent proper where agent requested permission to follow wife to bedroom where she said husband was and wife led them there without objection).

R&R at 13.  The Court agrees with the Magistrate Judge's analysis and conclusion on this point, and finds the Sixth Circuit's decision in Carter controlling.  Pursuant to that case, once the officers obtained consent to enter the house, they had the "latitude of a guest" to take steps this

way or that, unless restricted by the person giving consent. See 378 F.3d at 589. There is no evidence that the officers here were restricted by Mrs. Gill once inside the house; to the contrary, Mrs. Gill's actions in leading the officers to the basement stairwell while calling Defendant's name evinced just the opposite intent. Defendant's second objection to the R&R is overruled.

Finally, in his fourth objection, Defendant objects to the ultimate conclusion reached in the R&R – that the motion to suppress be denied. For the reasons stated above, the Court overrules this objection.

For the reasons stated above, it is ORDERED as follows:

(1) The Magistrate Judge's R&R of October 20, 2010 (Dkt. 33) is accepted and adopted as the findings and conclusions of the Court.

(2) Defendant's objections (Dkt. 34) are overruled.

(3) Defendant's motion to suppress evidence (Dkt. 14) is denied.

Dated: December 8, 2011　　　　　　　　　　s/Mark A. Goldsmith
　　　　Flint, Michigan　　　　　　　　　　　MARK A. GOLDSMITH
　　　　　　　　　　　　　　　　　　　　　　United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 8, 2011.

　　　　　　　　　　　　　　　　　　　　　　s/Deborah J. Goltz
　　　　　　　　　　　　　　　　　　　　　　DEBORAH J. GOLTZ
　　　　　　　　　　　　　　　　　　　　　　Case Manager